Ahren A. Tiller (250608)
Brett F. Bodie (264452)
Bankruptcy Law Center, APC
1230 Columbia St., Suite 1100
San Diego, CA 92101
Ph:(619) 894-8831
Fax:(866) 444-7026

Attorneys for Debtors
KAREN MARLENE HASAN

**UNITED STATES BANKRUPTCY COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KAREN MARLENE HASAN<br><br>    Debtor / Movant,<br><br>vs.<br><br>U.S. DEPARTMENT OF VETERAN AFFAIRS,<br><br>    Respondents, | CASE NO.: 13-03636-LA7<br><br>**DECLARATION OF DEBTOR IN SUPPORT OF MOTION FOR CONTEMPT AND SANCTIONS FOR WILLFUL VIOLATION OF THE AUTOMATIC STAY** |

I, KAREN MARLENE HASAN, am over the age of eighteen years and am competent to testify regarding the facts contained herein. I possess personal knowledge of the facts contained herein and if called upon to testify I could and would do so as follows. I do hereby declare under the penalty of perjury under the laws of the United State of America that:

1. On or about 1972, I enlisted in the US Air Force and was honorably discharged approximately one year later. Subsequently, on or about 1980, I enlisted in the US Army and served for approximately 3 years until I was honorably discharged.

DECLARATION OF DEBTOR
- 1 -

2. My prior military service entitled me to possible benefits paid by the Department of Veterans Affairs (hereinafter "VA).

3. In the early 2000s, I was diagnosed with a psychiatric condition that led to me becoming temporarily disabled. My psychiatric disability entitled me to VA Pension benefits.

4. On or about March of 2005, I was notified by the VA that they had determined that my actual income was higher than what I had reported to them. The result of this determination was a VA benefit overpayment of approximately $32,093.00.

5. To date, I have not received a satisfactory explanation as to the reason for the VA's determination, and I am unaware what additional income the VA cited as its basis for determining I had been overpaid.

6. I entered into a voluntary repayment plan with the VA, wherein I paid approximately $6,000.00 back to the VA towards my overpayment debt.

7. On or about 2008 I was unable to remain current on my voluntary payment plan and I ceased making payments to the VA.

8. On or about April 9, 2013, I filed a Chapter 7 bankruptcy case in the Southern District of California, case number 13-03632-LA7.

9. On schedule F of my bankruptcy case I listed the following claim:

    Veterans Benefits Admin             Benefit Overpayment         $41,000.00
    810 Vermont Ave NW
    Washington, DC 20420

10. Additionally, I included the following addresses for the VA in my creditor matrix for additional notice:

    Department of Veterans Affairs
    P.O. Box 530269
    Atlanta, GA 30353-0269

    Department of Veterans Affairs
    110 9th Ave. South
    Nashville, TN, 37203-3867

    US Dept. of Veterans Affairs
    Western Area Office
    3333 N. Central Ave. #3026
    Phoenix, AZ 85012-2458

11. A true and correct copy of the Court Certificate of Mailing with Service by BNC is attached hereto as Exhibit A and incorporated by this reference.

12. My bankruptcy case was discharged on July 10, 2013 and closed on July 15, 2013.

13. During the pendency of my bankruptcy case, the VA did not file an adversary proceeding seeking to establish that their claim was non-dischargeable.

14. On or about February 24, 2014, I filed my tax returns for tax years 2011 and 2013. My tax returns showed refunds owed to me of $2,019.00 for 2011 and $2,399.00 for 2013.

15. On or about March 10, 2014, I filed my tax return for tax year 2012. My 2012 tax return showed a refund owed to me of $2,305.00.

16. The combined amount of my tax refunds originally seized by the VA was $6,717.00

17. Upon filing my tax returns, the IRS sent me a notice stating that the refunds had been seized and paid to the US Department of the Treasury for my outstanding debt owed to the Department of Veterans Affairs. A true and correct copy of the notices sent by the IRS are attached hereto as exhibit B and incorporated by this reference.

18. On or about March 3, 2014, I contacted my bankruptcy attorney's office and spoke to attorney Ahren Tiller regarding the seized tax refunds and expressed my frustration and concern. Mr. Tiller advised me the seizure was unlawful and assured me he would contact the VA and attempt to get them to release my refunds.

19. On or about March 3, 2014, Mr. Tiller spoke to me and explained he had a lengthy conversation with a VA representative and he copied me on an email he sent to the VA. He explained that he believed the VA would release my tax refunds soon and instructed me to contact him if I did not receive them.

20. On or about March 18, 2014, I contacted Mr. Tiller as I had not yet received my tax refunds. He instructed me to contact the VA and request status and explained he would do the same.

21. On or about March 18, 2014, I contacted the VA by telephone and spoke with a representative wherein I explained again that I had filed for bankruptcy, that I had included the VA claim in my bankruptcy schedules, and that their claim had been

discharged. The VA representative told me they had record of my bankruptcy and that he saw that Mr. Tiller's email had been passed on to their bankruptcy department. The VA representative stated that the VA was processing the return of my refunds and told me to check back on or about March 28, 2014, if I did not receive them.

22. On or about early April 2014, I still had not received my tax refunds so I again contacted Mr. Tiller's office. Mr. Tiller stated he would again contact the VA and requested I let him know if I did not soon receive the refunds.

23. On or about mid-April 2014, I received a collection letter from the VA stating I still had a balance owed. A true and correct copy of the letter is attached hereto as Exhibit E and incorporated by this reference.

24. On or about May of 2014, I finally received approximately $2,303.00 from the VA of the total $6,717.00 that had been seized. I believed at that time the VA was processing the remaining refund and would soon return it to me.

25. After not receiving any additional funds, I again contacted my bankruptcy attorney on or about mid-June 2014.

26. My attorney again advised me he would follow up with the VA and that I should contact him if I did not soon receive the funds.

27. The unlawful seizure of the additional $4,420.00 caused me significant stress, anxiety, and concern. I began to believe I was powerless to get these funds returned to me.

28. On or about August 10, 2014, I experienced severe chest pains and was thought I was having a heart attack. I immediately went to the Emergency Room and after examination and tests, the doctor told me that he believed the chest pains were a result of stress and anxiety exacerbating my existing heart disease. The physician told me I needed to take steps to reduce my stress and anxiety. A true and correct copy of a Summary of Payments for the Aug 10, 2014 medical services is attached hereto as Exhibit H and incorporated by this reference. At the time, the most significant source of stress, anxiety, and frustration for me was my seized tax

refunds. In order to preserve my health and reduce the stress caused by the situation, I decided to temporarily abandon trying to get back my $4,420.00. For about a month, I did my best not to think about, or address the missing money.

29. On or about early-October 2014, I received a letter from the VA stating that I owed $14,060.00 and that my seized tax refunds were being applied to this debt. I was confused by this letter and initially believed the debt could be a wrongful charge for post-bankruptcy medical treatment by the VA.

30. To resolve the issue, I sought out assistance from the office of my local Congresswoman, the Hon. Susan Davis. I explained the situation to Lee Steuer, the Senior Community Representative for Congresswoman Davis, who attempted to assist me in resolving the issue with the VA.

31. In working with Ms. Steuer, it became quickly apparent that the debt the VA claimed I owed was not a wrongfully-charged, post-bankruptcy medical debt, but was in fact a benefit overpayment from 2008, five years prior to my bankruptcy case.

32. Ms. Steuer assisted me in having Congresswoman Davis send a letter to the VA explaining that I had filed bankruptcy and requesting the VA release my tax refunds.

33. In response to Congresswoman Davis's letter, the VA sent a letter explaining that they were aware of my bankruptcy case, but that they believed the 2008 overpayment was not discharged as they did not determine the overpayment until after my bankruptcy case was filed. A true and correct copy of the response letter sent by the VA is attached hereto as Exhibit G and incorporated by this reference.

34. I was shocked by the VA's response to Congresswoman Davis's letter and I did not know where to turn. I had already sought out the assistance of my bankruptcy attorney and my local Congresswoman, and despite the VA's initial assurances, they had not only continued to hold my seized tax refunds, but they were now also stating I had a $14,060.00 debt from 2008 that they stated was not discharged by my bankruptcy filing.

35. In mid-November I received another collection letter from the VA threatening to report the debt to my credit report, refer my account to a private debt collector, and garnish my wages.

36. The events up to this point culminating with the November 2014 collection letter pushed me into a severe depression. I felt hopeless and believed I would never escape from these alleged debts owed to the VA. I wondered if they would "discover" more overpayments from years past and if they could simply keep creating new debts that I could never escape from. Even bankruptcy seemed to have failed to wipe out the VA's claims.

37. During this period, I experienced significant stress, anxiety, sleeplessness, stress, depression, fear, and feelings of helplessness and despair as a result of the VA's actions.

38. I am a "permanent temporary" employee of the City of San Diego. My status as a permanent temporary employee means that I do not accrue vacation, sick, or holiday pay hours. When the City is closed during holidays, I go unpaid. In December and January, I receive significantly less income than normal as there are large unpaid holiday periods in December. I had expected to compensate for this lower pay and covered the shortfall during the holiday season by using my tax refund.

39. In addition, in December of 2014, my need for my tax refund was greater than normal. I had a friend stay with me in December who inadvertently brought bed bugs with her. I was forced to pay significant expenses eradicating the infestation, which included disposing of all my soft furniture including my mattress and bedding.

40. I have not yet been able to afford to purchase a new bed or any soft furniture as I have not even had enough money to stay current on my rent, because I had no access to my tax refunds to help cover the December/January shortfall.

41. My floors are cold, hard, and uncomfortable and make it very difficult to sleep. I have been unable to have friends or family come over to my home out of fear and

embarrassment of having to explain why I do not have a bed, couch, or other soft furniture.

42. In December of 2014 and January of 2015, I was unable to pay my rent on time as I did not have the funds from my tax refunds to help me cover the shortfall from the holidays. I had to borrow money from family and work out payment arrangements with my landlord.

43. These events caused me significant stress, anxiety, embarrassment, fear, and depression.

44. In mid-December of 2014, I again experienced severe chest pains and thought I was having a heart attack. I went to the Emergency Room to seek immediate treatment. When I initially arrived at the Emergency Room and explained my symptoms, I was immediately tested for a heart attack and that test showed that I was not having a heart attack. Following the test that ruled out an impending heart attack, I was sent to the waiting area to await full treatment and review by a physician at the Emergency Room. While I was waiting to be seen at the Emergency Room, I calmed down and my chest pains subsided. I then realized that just like the previous incident in August, the chest pains were likely a result of anxiety and stress. My primary source of stress and anxiety during this period was as a result of actions caused by the VA which made me unable to pay my rent or purchase basic household furniture. The VA's unlawful withholding of my tax refunds, caused me to have to sleep on the floor instead of a bed, thus making it difficult to sleep, which made my anxiety worse.

45. On or about late November of 2014, I again contacted my attorney Ahren Tiller regarding the ongoing problem and described to them the ordeal I had endured since last speaking with them.

46. Since this ordeal began, I estimate that I have spent at least 100 hours attempting to resolve this matter. I had extensive interaction with my attorneys' office, and with the office of Congresswoman Susan Davis. I also have contacted the VA directly on multiple occasions. I have also sought out advice and help from third parties, and I spent countless hours on my own researching and attempting to find a resolution to this matter.

47. Currently, I earn approximately $17 per hour at my position as a permanent temporary employee of the City of San Diego.

48. As of the date of this declaration, the VA has not yet returned my tax refunds to me and continues to actively collect on their claim for $14,060.00 for an overpayment that they allege occurred five years prior to my bankruptcy filing.

I do hereby declare under penalty of perjury under the laws of the United States of America that the aforementioned facts are true and correct.

Dated: March 19, 2015

                                                /s/ Karen Marlene Hasan
Karen Marlene Hasan
Debtor